UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GLENN A. BUSCH, Administrator of the
Estate of GARY S. BUSCH,

                              Plaintiff,

               - against -                                00 CV 5211 (SJ)
THE CITY OF NEW YORK, SERGEANT           **Memorandum and Order**
TERRANCE O'BRIEN, SERGEANT JOSEPH
MEMOLY, OFFICER WILLIAM LOSHIAVO,
OFFICER DANIEL GRAVITCH, OFFICER
MARTIN SANABRIA,

                              Defendants.
-----------------------------------------------------------X

APPEARANCES:

BELDOCK, LEVINE & HOFFMAN LLP
99 Park Avenue, Suite 1600
New York, New York 10016
By:    Myron Beldock, Esq.
        Cynthia Rollings, Esq.
        Vera M. Scanlon, Esq.
Attorneys for Plaintiff

COCHRAN NEUFELD & SCHECK LLP
99 Hudson Street, 8th Floor
New York, New York 10013
By:    Barry C. Scheck, Esq.
        Nick Brustin, Esq.
Attorneys for Plaintiff

CORPORATION COUNSEL OF THE
CITY OF NEW YORK
100 Church Street, Room 3-215
New York, New York 10007
By:    Jennifer Rossan, Esq.
        Kanika Juneja, Esq.
        Alan Scheiner, Esq.
Attorneys for Defendants

1

JOHNSON, Senior District Judge:

Presently before the Court are consolidated motions by Defendants Sergeant Terrence O'Brien, Sergeant Joseph Memoly, Officer William Loshiavo, Officer Daniel Gravitch, and Officer Martin Sanabria (collectively, "Defendants") seeking: (1) vacatur of the Court's Memorandum and Order dated September 9, 2004 ("September 9th Order"), granting Plaintiff's motion for a new trial on the excessive force shooting claim;(2) certification of the September 9th Order for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b); and (3) the Court's recusal from a second trial of the instant case, pursuant to 28 U.S.C. § 455. For the reasons stated herein, Defendants' motions are DENIED, in part, and GRANTED, in part.

## BACKGROUND

The underlying facts forming the basis for the instant litigation are set forth in the Court's September 9th Order, Busch v. City of New York et al., 224 F.R.D. 81 (E.D.N.Y. 2004), familiarity with which is assumed. Therefore, the Court will recite only the facts and procedural posture relevant to the instant motions.

On August 30, 1999, police officers responded, for the second time that day, to a call that Gidone Busch ("Busch") was threatening his neighbors with a hammer. The officers' response to that call culminated in Busch's shooting death. Plaintiff filed the instant 42 U.S.C. § 1983 action against Defendants, alleging, *inter alia*, violations of Busch's right to substantive due process under the Fourteenth Amendment and his right to be free from excessive force under the Fourth Amendment, as well as state law claims for

2

assault and battery. The four-week trial involved the testimony of thirty fact witnesses, five defendants, and four expert witnesses. On November 19, 2003, the jury, having deliberated for six hours, returned a verdict in favor of Defendants, clearing them of any liability.

In January 2004, Plaintiff moved for a new trial against all Defendants pursuant to Rule 59(a) of the Federal Rules of Civil Procedure. On or about February 25, 2004, Chambers received an *ex parte* letter from Doris Busch Boskey ("Boskey"), mother of the victim, that included her observations of the trial ("the letter").[1] At that time, the Court did not read the letter or have any knowledge of its substance.[2] On March 1, 2004, Defendants were notified of Boskey's letter via the electronic case filing (ECF) system. (Rossan Decl. ¶ 6.) The ECF description stated that the letter "regard[ed] the trial of [Boskey's] son Gary Busch," that Boskey had "request[ed] a conference" and that attached to the letter were various enclosures. (Id. at ¶¶ 6, 7.) According to Defendants, the Court declined to provide counsel with a copy of Boskey's letter and a law clerk informed counsel that the Court would not consider the letter. (Id. at ¶¶ 14, 15.) By Memorandum and Order dated September 9, 2004, the Court granted Plaintiff's motion for a new trial against all Defendants on the excessive force shooting claim and denied Plaintiff's other motions. Thereafter, on September 14, 2004, Chambers provided Defendants with a copy of

---

[1] Despite Defendants' unsubstantiated contentions to the contrary, it was only after Defendants brought the present motion – subsequent to the issuance of the September 9th Order – that the Court familiarized itself with the substance of Boskey's letter.

[2] A law clerk read the letter but Judge Johnson did not.

3

P-049

Boskey's letter.

On September 23, 2004, Defendants filed the instant motions, arguing in the alternative that: (1) the September 9th Order should be vacated because Defendants were denied their Fifth Amendment procedural due process right to notice and an opportunity to be heard on a substantive *ex parte* submission (Mot. at 3); (2) the Court should certify the September 9th Order for interlocutory appeal under 28 U.S.C. § 1292 (id. at 10); and (3) the Court should recuse itself from a second trial in this case. (Id. at 16.) Plaintiff opposes the motion on the grounds that: (1) Defendants' motion for vacatur lacks a legal or factual basis (Opp'n at 18); (2) Defendants do not satisfy the standards for interlocutory appeal (id. at 8); and (3) recusal is unnecessary. (Id. at 14.)

## DISCUSSION

I. **Motion for Vacatur**

Defendants claim that Boskey's letter "constitutes a violation of [D]efendants' fundamental right to notice and opportunity to be heard under the Due Process clause of the Fifth Amendment and the Federal Rules of Civil Procedure, sufficient to justify relief from the Order under Fed. R. Civ. P. 54(b) and the Court's inherent power." (Mot. at 3.)

A. *Standard of Review under Rule 54(b)*

Under Rule 54(b) of the Federal Rules of Civil Procedure, a district court's reconsideration of its previous decisions is limited to those instances in which the court is "presented with 'cogent or compelling reasons.'" In re Rezulin Products Liability Litigation, 224 F.R.D. 346, 350 (S.D.N.Y. 2004) (internal citations omitted). Thus, "a

4

court will 'generally adhere to [its] earlier decision on a given issue in the same litigation' and not depart from earlier rulings without good reason." Id. at 350. The Court of Appeals for the Second Circuit has made clear that a district court typically cannot reverse an earlier adjudication "unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" Official Comm. of the Unsecured Creditors of Color Tile, Inc., 322 F.3d 147, 167 (2d Cir. 2003). With those guiding principles in mind, the Court now turns to the merits of Defendants' motion for vacatur.

According to Defendants, "[t]he nature and substance of the Boskey Letter, unknown to [D]efendants until September 14, 2004, provides the new evidence, clear error, and manifest injustice, violating [D]efendants' Fifth Amendment rights, required to justify vacating the [Court's September 9th] Order." (Mot. at 3-4 n.1.) This Court disagrees. At the outset, the Court notes that as early as March 1, 2004 Defendants were on notice that Ms. Boskey had filed an *ex parte* communication regarding the trial and that the letter contained various enclosures. As previously stated, and as defense counsel concedes, the nature of the letter was apparent from its description on the docket sheet. (See Rossan Decl. ¶¶ 6, 7.)

Defendants' lack of knowledge of the precise substance of Boskey's letter is of no legal significance because the Court never read the letter or considered its substance. Consequently, the letter cannot be deemed to constitute new evidence nor can any clear error or manifest injustice be said to have occurred as a result of Boskey's *ex parte*

P-049

submission. Accordingly, the Court lacks any proper basis for reconsidering its September 9th Order and therefore Defendants' motion for vacatur under this prong is DENIED.

B. *Procedural Due Process*

Defendants' Fifth Amendment due process claim is grounded in the contention that, "[w]here, as here, a party 'attempt[s] to introduce additional factual contentions into the record . . . it was appropriate for defense counsel to receive copies of such correspondence and to have the opportunity to respond.'" (Mot. at 9 (citing Davidson v. Scully, 155 F. Supp. 2d 77, 81 n.1 (S.D.N.Y. 2001)).) This argument rests entirely on Defendants' flawed characterization of the letter as a substantive motion and on their conclusory allegations regarding the motivations behind Boskey's letter. (See id. at 5 ("Boskey's February 24th letter is a legal memorandum that was submitted, *ex parte*, to supplement [P]laintiff's post-verdict motion.").)

The Court finds that Boskey's letter is a personal communication from a grieving mother who apparently felt a sense of desperation over the tragic loss of her son. The only relief sought by Boskey was a conference with the Court and the requested conference never occurred. In addition, although the letter does contain purported factual assertions, it was written and sent without counsel's knowledge or assistance. (See e.g., Busch Aff. ¶¶ 3,4; Beldock Aff. ¶ 4; Scanlon Aff. ¶ 4.) Indeed, Plaintiff's counsel did not receive a copy of Boskey's letter until Defendants filed the instant motions. (See e.g., Boskey Aff. ¶¶ 2-4; Busch Aff. ¶¶ 5, 6; Beldock Aff. ¶ 9; Scanlon Aff. ¶ 8.) Defendants' allegations to the contrary are entirely lacking in merit as those statements are based on sheer speculation

6

rather than on fact. Moreover, Boskey is *not* a party to the instant litigation.[3]

Finally, the Court finds that Defendants have suffered no prejudice as a result of Boskey's letter because, as previously stated, it formed no basis at all for the Court's September 9th Order. Defendants admit that the prejudice they claim to have suffered is merely speculative. (See Mot. at 2-3 ("It is unclear, at this stage, whether the Court read the letter and to what extent it considered its contents or attachments . . . . [T]he role that the letter played in the Court's decision-making remains unknown.").) Indeed, as is oft-repeated throughout this opinion, Boskey's letter played no role whatsoever in the Court's decision to grant a new trial in this case. The Court's September 9th Order is based solely on the trial record and the Court's observations during the trial. Thus, it was wholly unnecessary for Defendants to respond to Boskey's letter because it did not in any way form a basis for the September 9th Order.

Because Defendants have failed to present this Court with any "cogent or compelling" reason to revisit or change its September 9th Order, the motion for vacatur is DENIED. See e.g., Fitzgerald v. Town of Kingston, 13 F. Supp. 2d 119, 125 (D. Mass. 1998) ("Particularly in view of the absence of evidence that the full Board ever saw the [*ex parte*] communication, Fitzgerald's not being afforded an opportunity to rebut DeCapua's report did not violate procedural due process.").

---

[3] The Court dismissed Boskey as a plaintiff in the case well before trial. Therefore, Boskey's prior status as a party to the instant litigation is insignificant since she was not a party at the time the letter was written, which is the relevant time period for purposes of the present motion.

7

P-049

## II. Motion for Interlocutory Appeal

Defendants next argue that the Court should certify the following question for interlocutory appeal pursuant to 28 U.S.C. § 1292: "whether this Court abused its discretion in ordering a new trial for the sole reason that it disagreed with the jury's opinion about the credibility of witnesses." (Mot. at 10.) Under § 1292, the following three criteria must be met before a district court may certify an order for interlocutory appeal: "(1) the order involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." Am. Nat'l Fire Ins. Co. v. Mirasco, Inc., 265 F. Supp. 2d 240, 249 (S.D.N.Y. 2003) (internal quotations omitted). In considering a request for certification, a district court must carefully assess whether each of the three conditions for certification is met. Id. at 249. The determination of § 1292(b) certification lies within the discretion of the district judge, Ferraro v. Sec'y of the U.S. Dep't of Health & Human Serv., 780 F.Supp. 978, 979 (E.D.N.Y. 1992), and only "exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978); accord Klinghoffer v. Achille et al., 921 F.3d 21, 25 (2d Cir. 1990). "The efficiency of both the district court and the appellate court are to be weighed, and the benefit to the district court of avoiding unnecessary trial must be weighed against the inefficiency of having the Court of Appeals hear multiple appeals of the same case." Am. Nat'l Fire Ins. Co., 265 F.Supp.2d at 249. The Court now turns to the above-stated

8

criteria.

   A.   *Controlling Question of Law*

"A controlling question of law includes issues that would terminate an action if the district court's order were reversed, substantially affect a large number of cases, or involve a procedural determination that may importantly affect the conduct of an action." Traub v. Cornell Univ., 1999 WL 224804, at *2 (N.D.N.Y. 1999) (citations omitted); see also Genentech, Inc. v. Novo Nordisk A/S, 907 F.Supp. 97, 99 (S.D.N.Y. 1995). However, when the controlling issues are factual rather than legal, § 1292(b) certification is unavailable. Genentech, 907 F.Supp. at 99 (citing Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 630 (2d Cir. 1991)).

In its September 9th Order, the Court found that "a new trial is warranted because the jury's verdict on the excessive force shooting claim is against the weight of the evidence presented at trial, and permitting the verdict to stand would result in a miscarriage of justice." Busch, 224 F.R.D. at 95. Defendants now request this Court certify the following question for interlocutory appeal: "is there a basis in the trial record to support the trial judge's decision that a new trial is warranted, or was it an abuse of discretion for the trial judge to grant a new trial based on his assessment of the credibility of many witnesses." (Defs.' Reply at 9.) Specifically, the Court determined that "abundant testimonial evidence exists that lends serious doubt to the credibility of some of the police officers' and Ionovitch's testimony." Busch, 224 F.R.D. at 95.

Asking, as Defendants urge this Court to do, if there is a basis in the trial record to

9

support the Court's September 9th ruling is akin to inquiring as to whether the Court properly applied the law of granting a new trial to the facts of the instant case. However, § 1292(b) is not a vehicle "for securing early resolution of disputes concerning whether the trial court properly *applied* the law to the facts." Grenentech, 907 F.Supp. at 100 (internal citations omitted) (emphasis added). Given that its decision to grant a new trial was based on the trial record before the Court, Defendants' argument that the standard for granting a new trial should have been applied differently to the facts in this case fails to provide an adequate basis for § 1292(b) certification. See Grenentech, 907 F.Supp. at 100.

Furthermore, the law of granting new trials is fairly well settled and was correctly stated in the Court's September 9th Order. See Busch, 224 F.R.D. at 95-96; see also Farrior v. Waterford Board of Educ., 277 F.3d 633, 634 (2d Cir. 2002); DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133-34 (2d Cir. 1998); Song v. Ives Labs., 957 F.2d 1041, 1046-47 (2d Cir. 1992); Metromedia Co. v. Fugazy, 983 F.3d 350, 359 (2d Cir. 1992). Under Rule 59(a) a new trial "may be granted even if there is substantial evidence supporting the jury's verdict." Manley v. Ambase Corp., 337 F.3d 237, 244 (2d Cir. 2003) (finding no abuse of discretion where district judge set aside jury verdict and ordered new trial) (internal quotations omitted). "[A] trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." Id. at 244-45 (internal quotations omitted). Additionally, in order to grant a new trial the district court "must conclude that 'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice,' i.e., it must view the jury's verdict as 'against the weight of the

10

evidence.'" Id. at 245 (internal citations omitted).

Defendants, relying primarily on Sorlucco v. New York City Police Dep't, 971 F.2d 864 (2d Cir. 1992), argue that, on a motion for a new trial, issues of credibility should be left to the jury. In Sorlucco, the Second Circuit Court of Appeals held that where "there [was] no great weight of the evidence in either direction" the trial court had abused its discretion in granting a new trial. Sorlucco, 971 F.2d at 875 (internal citations omitted). Unlike in Sorlucco, and as detailed in the September 9th Order, the great weight of the evidence in this case did not support the jury's verdict. Furthermore, this Court does not construe Sorlucco to apply broadly to every instance where witness credibility is an issue. Instead, the Court reads Sorlucco to apply narrowly to only those cases where there is "no great weight of evidence in either direction." (See id. ("*Under the circumstances*, we think the trial court overstepped its bounds and usurped the jury's function of judging credibility.") (emphasis added). The Court's interpretation of Sorlucco is supported by United States v. Landau, 155 F.3d 93, 104 (2d Cir. 1998) (citing Song, 957 F.2d at 1047), which the Second Circuit decided several years *after* Sorlucco. In Landau, the Court of Appeals explicitly stated:

> the fact that the jury's verdict was, as the Government contends, "based in part on its evaluation of [witness] credibility" does not preclude a district judge's grant of a new trial. It is inherent in the proposition that the district judge may weigh the evidence that the judge will consider the credibility of witnesses . . . . *We do not read Sorlucco to mean that a trial judge can never substitute its view of the evidence for that of the jury, provided the judge is "convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice."*

11

Id. at 106 (emphasis added). Other courts in the Second Circuit have followed accordingly. See e.g., Hairston v. Long Island Railroad Co., 2003 WL 21254196 at *3 (S.D.N.Y. 2003) ("The judge retains [the discretion to grant a new trial] even if the jury's determination was based on its evaluation of the credibility of witnesses.") (citing Landau, 155 F.3d at 104-06); Ruffin v. Fuller, 125 F.Supp.2d 105, 109 (S.D.N.Y. 2000)); Otero v. Housing Authority of the City of Bridgeport, 263 F.Supp.2 440, 443 (D.Conn. 2003) (distinguishing Sorlucco and granting new trial). Therefore, the Court concludes that Sorlucco does not present a bar to the new trial standard being met in this case. Nor do the other cases cited by Defendants in support of this motion alter the controlling legal principles relied upon by the Court in its September 9th Order, or present conflicting legal authority sufficient to persuade this Court that there exists substantial doubt about the state of the law regarding a judge's discretion to grant new trials.

Given that Defendants have failed to satisfy the first prong for certification for interlocutory appeal, the Court finds it unnecessary to reach the two remaining prongs. Accordingly, Defendants' motion for certification for interlocutory appeal is DENIED.

Defendants assert, for the first time in their reply papers, that the "question of whether deadly force could have been legally justified regardless of whether Busch was lunging or charging at the time he was shot is a separate and controlling question of law as to which there is substantial grounds for disagreement." (Defs.' Reply at 8.) However, as with Defendants' other proposed question for certification, this question involves the Court's *application* of the case law to the particular facts of the instant case and therefore,

12

is not a proper basis for interlocutory appeal.

III. **Motion for Recusal**

Defendants have argued that: (1) "this Court voiced strong statements in its opinion regarding the credibility and veracity of defendants and witnesses, raising an appearance of impropriety during a second trial of this case . . . . [in that] [t]he second trial in this case will necessarily involve many if not all of the same witnesses and testimony as the first trial" (Defs.' Mot. at 18); and (2) "this Court is required to recuse itself because it received an *ex parte* communication from Doris Busch Boskey supplementing plaintiff's post-verdict papers that could or did form the basis for this Court's decision to grant a new trial." (Id. at 19.)

A. *Standard of Review*

A judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a), or "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). "The analysis is the same under both sections, that is, it looks to the extrajudicial conduct as the basis for making such a determination, *not conduct which arises in a judicial context*." Apple v. Jewish Hospital & Medical Center, 829 F.2d 326, 333 (2d Cir. 1987) (emphasis added). Under both provisions, a court must ask "whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." Muyet, 994 F.Supp. 550 (2d Cir. 1998). In addition:

13

> [W]hen deciding a recusal motion, 'the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case.... [R]ecusal is not warranted for reasons that are 'remote, contingent, or speculative'.... [and a trial judge] 'should not recuse himself on unsupported, irrational, or highly tenuous speculation' lest 'the price of maintaining ... the appearance of justice ... be the power of litigants or third parties to exercise a veto over the assignment of judges.' The pertinence of these considerations is heightened when a disqualification motion is made in a litigation that is not new, but has advanced considerably before the judge in question.

United States v. Helmsley, 760 F.Supp. 338, 342 (S.D.N.Y. 1991).

### B. *Appearance of Partiality under § 455(a)*

Despite their vague references to the Court's purported "strong statements," Defendants have failed to specify the language they find so objectionable as to warrant my recusal. To the extent that the September 9th Order itself provides Defendants' sole basis for recusal under § 455(a), Defendants' motion must fail. See Liteky v. United States, 510 U.S. 540, 554 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.... Almost invariably, they are proper grounds for appeal, not for recusal [.]") Indeed, the language contained in that opinion was necessary to communicate and explain the Court's ruling and does not go beyond that aim.

Defendants liken the instant matter to Haines v. Liggett Group Inc., 975 F.2d 81 (3d Cir. 1992), which obviously is not binding on the Court. Nevertheless, this Court does not find the two cases to be analogous. In Haines, the trial judge issued an opinion with the following prologue:

> In the light of the current controversy surrounding breast implants, one wonders when all industries will recognize their obligation to voluntarily disclose risks from the use of their products. All too often in the choice between the physical health of consumers and the financial well-being of business, concealment is chosen over disclosure, sales over safety, and money over morality. Who are these persons who knowingly and secretly decide to put the buying public at risk solely for the purpose of making profits and who believe that illness and death of consumers is an appropriate cost of their own prosperity! As the following facts disclose, despite some risking pretenders, the tobacco industry may be the king of concealment and disinformation.

Id. at 97 (quoting 140 F.R.D. 681, 683). The Third Circuit Court of Appeals held that "it is impossible for us to vindicate the requirement of 'appearance of impartiality' in view of the statements made in the district court's prologue to its opinion. Id. at 98. The language used in the Court's September 9th opinion was neither inflammatory nor excessive. Rather, the witnesses' testimony was described merely as "exaggerated or overstated," "untruthful," "inconsistent" and "strain[ing] credulity." Busch, 224 F.R.D. at 95-96. Furthermore, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . . Almost invariably, they are proper grounds for appeal, not for recusal . . . . [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 554 (1994); accord In re Parr, 13 B.R. 1010, 1018 (2d Cir. 1981) ("To warrant recusal, even an alleged appearance of bias should be founded, at least in part, upon an

P-049

extrajudicial source, *and not merely upon what the judge has learned during the course of a particular case nor upon trial rulings and conduct.*") (internal citations omitted).

C. *Personal Bias, Prejudice or Knowledge under § 455(b)*

Defendants contend that "this Court is required to recuse itself because it received an *ex parte* communication from Doris Busch Boskey supplementing plaintiff's post-verdict papers that could or did form the basis for this Court's decision to grant a new trial." (Mot. at 19.) This contention is belied by the fact that the letter could not and did not play any role in the Court's September 9th decision because the Court had not even read it until Defendants brought the instant motion. Nevertheless, "[g]enerally, isolated instances of *ex parte* communications, in and of themselves, are simply not grounds for recusal". In re Parr, 13 B.R. 1010, 1019 (2d Cir. 1981); see also Fitzgerald v. Town of Kingston, 13 F.Supp.2d 119 (D.Mass. 1998) (holding that there was no due process violation warranting recusal, reasoning, in part, that the record lacked any evidence to suggest that the defendant Board based its decision on an *ex parte* communication); United States v. Walker, 920 F.2d 513 (8th Cir. 1990) (finding no basis for recusal in absence of appearance of bias where evidence viewed by judge *in camera* only duplicated evidence presented at trial). In fact, there is a long-established tradition in this and other circuits of affording little or no weight to isolated *ex parte* communications, even in far more serious criminal and deportation contexts. See e.g., In re Grand Jury Subpoena, 72 F.3d 271, 276-77 (2d Cir. 1995); In re Grand Jury Witness, 835 F.2d 437, 441 (2d Cir. 1987); Crowe v. Smith, 151 F.3d 217, 235 (5th Cir. 1998). Defendants have made no showing of the

16

Court's personal bias, prejudice, or knowledge in this matter as their assertions are based entirely on the Court's unfavorable ruling and on sheer speculation about the impact of Boskey's letter in that decision.

Nevertheless, in an overwhelming abundance of caution, the Court will recuse itself from the second trial in this matter given its previous conclusion that the testimony of several witnesses who are likely to testify at the second trial was incredible.

## CONCLUSION

For the reasons stated herein, Defendants' motions for vacatur and for certification for interlocutory appeal are DENIED, and Defendants' motion for recusal is GRANTED.

SO ORDERED.
DATED:    September 9, 2005
          Brooklyn, New York

Senior U.S.D.J.